## RICHARD COGAN vs. FRANKLIN COOK.

### August 21, 1875.

**Vendor and Purchaser—" Good and Sufficient Deed, free from Encumbrances."—** The defendant executed to the plaintiff a written contract, upon a bargain and sale of real estate, by which he agreed to execute and deliver to the plaintiff "a good and sufficient warranty deed, in fee-simple, free from all encumbrances," upon being paid the purchase price, in instalments, on or before certain specified dates. *Held*, that this contract calls for a deed, not only sufficient in form, but which will pass the title free from encumbrances, so that if the vendor has no title, or, if the land is encumbered, the tender of a deed with the specified covenants is not a compliance with the contract.

**Same—Time Allowed for Preparing and Delivering Deed.—**The plaintiff having tendered the purchase money before the last day specified for its payment, and demanded a deed, *Held*, that defendant was entitled to a reasonable time, within the time specified, within which to comply with the demand.

**Deed—Description of Premises—" East Half" of Lot.—**A deed conveyed the east half of lot 4, s. 25, t. 29, r. 24. A line drawn through the lot north and south, equidistant from the east and west lines of the lot, would not divide the lot into equal parts according to area. *Held*, that presumptively the deed conveys the east half according to area. Also, that there is no presumption that the parties intend that the tract conveyed shall be ascertained by the rule of sub-dividing adopted in the government survey—that is, by running a line equidistant from the opposite sides of the lot.

**Same—Evidence of Custom Excluded.**—To vary the *prima facie* effect of such a deed, an offer to prove that the usual and customary way of sub-dividing similar government lots into halves was by a line running midway between, and parallel to, the opposite lines of such lot, is inadmissible.

**Same—Evidence of Location of Division Fence Excluded.**—Also, an offer to prove that at the date of the deed, and down to the last purchase, "the fence dividing the east and west halves of lot 4 was in the line running midway between the east and west lines of the lot," is inadmissible.

**Absolute Deed and Improperly Recorded Defeasance—Subsequent Quit-claim.**— A executed to B a deed of real estate absolute in terms, but intended only as a mortgage, and B executed to A an instrument of defeasance, by which B agreed to quit-claim to A upon being paid the debt which the deed was given to secure. This instrument was not acknowledged, but was placed on the record. *Held,* that the instrument was not entitled to be recorded, and that, the defeasance not being legally recorded, the deed from A to B could not be affected or defeated by it, as against a grantee, without actual notice of the defeasance of B's right, title, interest, claim and demand" in the land, and that such grantee took the title which B appeared to have by the deed from A, notwithstanding such instrument of defeasance.

**Appeal—Bill of Exceptions.**—Where a case comes to this court on a bill of exceptions, this court will not consider any question not raised by an exception taken in the court below.

Appeal by plaintiff from an order of the court of common pleas of Hennepin county, *Young,* J., presiding, refusing a new trial after verdict for defendant.

*C. H. Benton,* for appellant.

*D. A. Secombe,* for respondent.

GILFILLAN, C. J.[1] This is an action by the vendee against the vendor, in a contract to convey real estate, for an alleged breach of the contract by failure to convey. By the contract the defendant bargained to the plaintiff a certain lot, and bound himself "to make, execute and deliver a good and sufficient warranty deed, in fee-simple, free from all encumbrances, except such as may arise by virtue of any tax assessed subsequent to the execution of this instrument," upon being paid the sum of $250.00 on or before certain dates specified. The first instalment was paid in proper time, and before the day specified for it the plaintiff tendered the remainder of the purchase money, and demanded

---

[1] Cornell, J., having been of counsel, did not sit in this case.

a deed. Eleven days after this, and within the specified time, the defendant made a proper deed, and offered to deliver it, and to procure the release of a mortgage, which was an encumbrance on the land, upon being paid the remainder of the purchase money. The plaintiff did not receive the deed.

As, when the plaintiff signified his readiness to pay the remainder of the price, and receive the deed, the time appointed in the contract had not expired, the defendant had, within that time, a reasonable time after the call upon him in which to comply with it; and we cannot say, from the bill of exceptions, that the eleven days was not a reasonable time—at any rate, it does not appear that plaintiff refused to receive the deed on that ground.

The grounds on which plaintiff seeks to recover are, substantially, *first*, that defendant had no title to the lot; *second*, that it was encumbered by a judgment against defendant; *third*, that it was encumbered by a mortgage; *fourth*, that the tender of a deed made by defendant was insufficient, because he did not procure, nor offer to procure, a release of the mortgage before he should be paid the remainder of the purchase money.

The existence of the judgment is not alleged in the complaint, and for that reason the court below properly excluded evidence of it.

The defendant claims that, by the contract, he was not bound to convey a good title in fee, free from encumbrances, but only to execute a deed sufficient in form, with proper covenants as to title and against encumbrances.

That would be a compliance with the literal terms of the contract. Some cases, in construing such contracts, have adhered to the letter, and have held that a deed sufficient in form is a compliance, although the vendor may have no title. The more recent cases, however, maintain the more reasonable rule, and that more consistent with the probable intention of the parties—that where a contract for the sale of

lands calls for a good and sufficient deed, it must be such a deed as actually passes the title. *Fletcher* v. *Button*, 4 N. Y. 396; *Schreck* v. *Pierce*, 3 Iowa, 350; *Conway* v. *Case*, 22 Ill. 127; *Wilson* v. *Getty*, 57 Penn. St. 266. The parties to such a contract could hardly contemplate that the performance of it might have no other effect than to pass the purchaser's money to the seller, and pass to the purchaser only the right to sue and recover it back.

The defendant's title was derived as follows:

*First.* A warranty deed of the east half of lot 4, section 25, town 29, range 24, from William G. Murphy to Richard Martin, dated May 26, 1855, recorded July 5, 1855.

*Second.* A patent to lot 4 to Murphy, dated February 16, 1856.

*Third.* A deed from Martin to one Brewster, dated August 9, 1856, the granting clause in which was, "do bargain, sell and quit-claim unto the said Brewster, his heirs and assigns forever, all my right, title, interest, claim and demand in and to the following described land," etc.

*Fourth.* A deed from Brewster to defendant, dated March 6, 1871.

The defendant also introduced, against plaintiff's objection, the record of a duplicate receipt, by the receiver of the United States land office, of the price for lot 4. As the title from the government was made out by the patent, the introduction of this record could not affect the case one way or the other, and it is unnecessary to consider whether it was properly admitted.

The north line of lot 4 is irregular, following a diagonal course across the lot, so that a line drawn through the lot from north to south, equidistant from its east and west lines, would not divide its area equally, and would leave the premises in question on the west side of the line. Dividing the area equally by a line drawn north and south would leave those premises in the east half. The plaintiff claims the former to be the proper mode of dividing the lot to

ascertain the east and west halves, and, adopting that mode, the defendant would have no title to the premises in question, for the deed from Murphy to Martin would pass none to the latter.

To prove that such was the proper mode of dividing the lot, the plaintiff offered to prove " that the usual and customary way of sub-dividing similar government lots into halves was by a line running midway between, and parallel to, the opposite lines of such lot," and also that the fence dividing the east and west halves of lot 4 was, at the time of the deed of the east half by Murphy to Martin, on the line running midway between the east and west lines of the lot, and that it so remained until defendant came into possession. On defendant's objection to these offers the court below excluded the evidence.

As a general rule the terms of a written instrument are to be understood in their plain, ordinary and popular sense. But language may be ambiguous and used in different senses; or general words may, in particular trades and branches of business—as among merchants, for instance—be used in a new, peculiar, or technical sense, for which reason, in a few instances, the testimony of experts is proper to show the peculiar or technical use of the words in the branches of business to which the instrument relates. Courts are not disposed to enlarge the class of cases in which such testimony is admitted, and the danger of admitting it to qualify conveyances of real estate, by which others than the immediate parties may be affected, should impel courts, if not to reject it altogether when offered for such a purpose, at least to apply the most stringent rules to its admission. To show the usual and customary way of subdividing government lots into halves, without showing that such was the usual and customary way of sub-dividing for the purpose of sale, or showing that, when used between grantor and grantee in a deed, the word " half " does not mean one of two equal parts, but may mean one of two

perhaps very unequal parts, would not be enough to change the general and popular meaning of the word used in this deed, even if that character of proof is ever to be admitted to explain conveyances of real estate. The offer, moreover, does not state any particular time at which the way of subdividing, as proposed to be proved, prevailed.

The fact, if proved, that, at the date of the deed from Murphy to Martin, there was a fence along the line running through the lot north and south, midway between the east and west lines, would not, the fence not being referred to in the deed, establish that it was not the intention to convey what the deed purports—to wit, one-half of the lot—and the offer to prove it was properly excluded.

When a deed designates the land conveyed as one or more of the sub-divisions known in the United States surveys, as if it be designated as a particular section, or half-section, quarter-section, or half-quarter, or quarter-quarter-section, the presumption is that the parties intend that the tract conveyed shall be ascertained in the same manner as the designated sub-division is ascertained in the governmental surveys. But there is no ground for such a presumption where the deed conveys a tract not known in that system of surveys. Thus, if the tract be described as the east or west half of the smallest governmental sub-division, as of a lot or quarter-quarter-section, we cannot presume that the parties intend to apply, in ascertaining the tract conveyed, the arbitrary rule which prevails in the government system of surveys for ascertaining tracts other than such as the deed conveys.

In order to show that the deed from Murphy to Martin was only a mortgage, plaintiff offered the record of an instrument from Martin to Murphy, not acknowledged nor proved, but recorded prior to the date of the deed from Martin to Brewster, which instrument recites that the deed from Murphy to Martin was executed as security for a debt, and by which Martin agrees to quit-claim to Murphy upon

payment of the debt. This record was objected to as incompetent and immaterial, and was excluded. The objection to its competency is that the instrument was not entitled to be recorded, because not acknowledged nor proved. The instrument is a "conveyance," as defined by Rev. St. of 1851, ch. 46, § 30, and that chapter did not authorize the recording of any conveyance unless acknowledged or proved. Chapter 23, Laws 1866, makes the record of such instruments *prima facie* evidence, in any court, of the contents of the original instrument, although it does not make the record notice. The record offered was, therefore, competent.

But it was not material. The bill of exceptions shows that there was no evidence of actual notice of the instrument to defendant, and the unauthorized record was not notice. The instrument would make the deed from Murphy to Martin only a mortgage, so that, unless by virtue of the statute, no title passed by Martin's deed to Brewster. It is claimed that because this last deed purports to convey only Martin's right, title, interest, claim and demand in and to the land, the case is to be controlled by the decisions in *Everest* v. *Ferris*, 16 Minn. 26, and *Marshall* v. *Roberts*, 18 Minn. 405. It is materially different from the latter of these cases, in which it was only decided that the grantee in what is known as a quit-claim deed takes nothing as against the grantee in a prior unrecorded deed. This case is governed by Rev. St. of 1851, ch. 46, § 27, and Gen. St. ch. 40, § 23, which sections are identical, and provide : "When a deed purports to be an absolute conveyance in terms, but is made, or intended to be made, defeasible by force of a deed of defeasance, or other instrument for that purpose, the original conveyance shall not be thereby defeated or affected as against *any person* other than the maker of the defeasance, or his heirs or devisees, or persons having actual notice thereof, unless the instrument of defeasance is recorded in the registry of deeds in the county where the

lands lie." This defeasance was not recorded (legally); the defendant had no actual notice of it; he does not claim as heir or devisee of the maker of the defeasance. As to him, then, by the terms of the statute, the deed from Murphy to Martin cannot be " defeated or affected " by the instrument of defeasance. As between Murphy and him, the deed is absolute, as its terms purport. Upon examining the brief of counsel and the opinion of the court in *Everest* v. *Ferris*, we find that these provisions of statute (Rev. St. ch. 46, § 27, and Gen. St. ch. 40, § 23,) were not cited or referred to in that case, but were evidently overlooked both by the court and counsel.

The plaintiff claims that defendant's offer to deliver a deed, and procure a release of the mortgage then an encumbrance on the land, was insufficient, because the offer was to procure a release " upon being paid " the remainder of the purchase money, and that this means that, upon being first paid, he would procure a release at some future time. There is no exception nor ruling of the court below which presents the question whether such an offer would be sufficient. The instructions of the court to the jury seem to imply that it would not; but as this case comes up on a bill of exceptions, and the question is not presented by any exception, we cannot consider it

Order affirmed.

