JOHN H. JONES ET AL., EX'RS v. ROBINSON PASHBY ET AL.

*Construction of deed—"Half"—Estoppel from bringing ejectment*

The word "half" in descriptions of premises conveyed by deed is not to be understood literally if a different sense is indicated by the context, by accompanying circumstances or by subsequent acts of the parties.

Land was so partitioned by mutual conveyance as to make it uncertain where the dividing line lay. A subsequent grantee of one portion built a house on the doubtful strip and mortgaged it, and the mortgagee went into possession. On foreclosure certain persons impleaded as subsequent encumbrancers made it part of their defence that the mortgagee should account for rents and profits, and decree was rendered on that basis. *Held*, that they were thereafter estopped from bringing ejectment for the disputed strip as grantees from the adverse claimant.

Error to St. Joseph.    Submitted June 15.    Decided June 21.

EJECTMENT.    Plaintiffs bring error.    Affirmed.

*J. B. Shipman* and *H. H. Riley* for appellants.

*D. C. Page* and *Charles Upson* for appellees.

COOLEY, J.   Ejectment.   On March 30, 1868, Ann and Charles Ewing conveyed to James and Charles Richardson lands situated in the county of St. Joseph described in the deed as "the east half of the northwest quarter and the east half of the southwest fractional quarter, all in section 36 in township 7 south, of range 11 west, containing one hundred

acres." The first of these parcels was an eighty-acre lot in regular and customary form; the second was made fractional by a small lake which formed its southern boundary, the shore of which appears to have been variable, but at that time ran in a southeasterly and northwesterly direction. This parcel contained not quite twenty acres. The United States survey was not put in evidence to show either the lines or the quantity.

May 20, 1872, James Richardson conveyed to Charles Richardson his interest in "the west half of the east half of the northwest quarter and the west half of the southwest fractional quarter" of said section thirty-six, "containing fifty acres of land, being the west half of one hundred acres of land," deeded as aforesaid. On the same day Charles Richardson conveyed to James Richardson his interest in the east half of the same lands, describing it as containing fifty acres. James Richardson conveyed by the same description to Robert Mandigo, October 5, 1872, and Robert Mandigo conveyed to Robinson Pashby, January 30, 1875. This last conveyance was made to secure the payment of an indebtedness, and Pashby afterwards proceeded in chancery for a foreclosure, making the plaintiffs in this suit parties as subsequent incumbrancers. He obtained decree June 15, 1878, under which the lands were sold and bid in by himself.

After this sale had been made a controversy sprung up respecting the dividing line between the east and west halves of the lands described in the Ewing deed. If that line were run equidistant between the east and west boundary lines of the tract, the east parcel would contain five acres and upwards more than the other. It was agreed by all parties that the north parcel must be so divided as to make two 40-acre lots in regular form; and Pashby contended that the same line which divided the north parcel should be extended through the south parcel also. Those interested in the west half on the other hand insisted that the south parcel should be divided by a north and south line giving equal quantities on either side of it. Acting upon this claim the plaintiffs in this suit took from Charles

Richardson a deed of the land on the south parcel lying between the line dividing that parcel through the center, and the line which would make of the parcel two equal portions, and brought ejectment for it. A diagram of the parcel, showing the land in dispute, is given in the margin.* The principal value of the land in controversy consists in a building known as the Lake View House, which was built by Mandigo as a summer resort before he conveyed to Pashby.

From this statement of facts it will be seen that the controversy involves the proper construction of the deeds executed by Charles and James Richardson for the purpose of partitioning the lands between them. If by those deeds the two parcels of land were to be divided by a line running through them north and south, equidistant from the east and west sides, then defendants would seem to be entitled

*DIAGRAM.

to judgment; but if the purpose was to divide the land into parcels equal in quantity, the result should be different. No doubt the word "half" when used in describing lands should be understood literally when nothing appears to the contrary. *Au Gres Boom Co. v. Whitney* 26 Mich. 42; *Dart v. Barbour* 32 Mich. 267. But there can be no universal rule that the word shall be so interpreted, for it is often used in conveyances when the context indicates a sense quite different. Two parts of a farm separated by a river or a highway may be called the two halves without much regard to their relative quantity; and in surveys the word "half" is often used quite as loosely, but without the least confusion. In all such cases the word must be taken in the sense intended if that is evident, and if not, the accompanying circumstances and the subsequent acts of the parties may perhaps direct us to the true meaning.

In this case both parties put in evidence to show a practical construction of the Richardson deeds by the parties concerned; but this is so conflicting as to be of little value. The most important fact in the case is the building of the Lake View House by Mandigo on land which, according to plaintiffs' construction of the deeds, he did not own; but the value of this is greatly weakened, if not destroyed, by evidence that Mandigo at the time did not understand that he owned the land, but expected to purchase it afterwards.

The foreclosure suit, however, furnishes evidence of a practical construction which we think it impossible for plaintiffs to overcome. It has been stated already that plaintiffs were defendants in that suit. Pashby had been in possession under his deed, and the defendants in the foreclosure made it a part of their defence that he should account for the rents and profits. They went into evidence to show what the fair value of the rents and profits was; and for this purpose the Lake View House was taken and deemed to be a part of the mortgaged property. The adjudication was made upon that assumption; and we must therefore suppose that when the land was sold under the foreclosure decree, it was purchased by Pashby on the

understanding, which had accompanied the proceedings throughout, that the Lake View House was included. These plaintiffs therefore had the benefit in the foreclosure suit of the construction of the Richardson deeds which Pashby now relies upon, and they are not at liberty to contend now that the basis upon which the adjudication in the foreclosure suit proceeded was erroneous.

This was the view taken by the circuit judge, and the judgment must be affirmed with costs.

The other Justices concurred.