(43 Misc. Rep. 117.)

PEOPLE v. HALL et al.

(Supreme Court, Trial Term, Franklin County. March, 1904.)

1. BOUNDARIES—DESCRIPTION IN DEED—CONSTRUCTION.

In a description in a deed the words "east half" and "west half," though naturally implying an equal division, may lose that effect when it appears that at the time the deed was made, some fixed boundary or monument divided the premises somewhere near the center, so that the words referred more properly to one of such parts than to a mathematical division, which had never been made.

2. SAME—CONFLICTING ELEMENTS—RELATIVE IMPORTANCE.

The visible locative calls as marked or appearing on the lands will govern the construction of a deed in preference to quantity, course, or distance; and where any particular description is inconsistent with other parts it may be rejected if enough of it remains to locate the lands intended to be conveyed.

3. SAME—PRACTICAL LOCATION—ACQUIESCENCE.

Where a practical location of boundaries has been acquiesced in for a number of years, it will not be disturbed.

Action by the people of the state against Benjamin E. Hall and others. Complaint dismissed.

Elon R. Brown, for plaintiff.
Frederick D. Kellogg, for defendant.

JOHN M. KELLOGG, J. The parties hereto own the non-resident land in the northeast quarter of township 24, Macomb's Purchase, in the county of Franklin, being the whole of said quarter township, except 400 acres of resident land in the northeast corner; the plaintiff owning the westerly half and the defendant the easterly half. The question here is as to the ownership of a disputed strip between the McClintock line, which mathematically divides said township into the east and west half, and the Gilcrist or Colvin line, which is the line of an old survey made over 50 years ago; the defendant contending that this latter line, under the conveyances by which the property is held, is the true dividing line. The Colvin line places 3,539 acres, all nonresident land, in the westerly half, and 3,953 acres, nonresident land, and 400 acres, resident land, in the easterly half. The Averell line, so called, was run by a surveyor of that name in 1889, and is east of the other two lines. The McClintock line was recently run by direction of the State Engineer to divide the quarter township into two equal parts, and the map upon which such line is shown fixes the true acreage at 7,892 acres—a larger amount of land than was ever before supposed to be contained in it. This line and map is only important as a suggestion as to an equal mathematical division and as illustrating the situation. The Averell line was supposed to result from a survey of the township, but, like the Colvin line, does not make an equal number of acres in the two halves, giving 4,006 acres to the westerly half, and 3,886

¶ 3. See Boundaries, vol. 8, Cent. Dig. § 248.

acres, including the nonresident land, to the easterly half. In 1877 all the nonresident land in said quarter was sold for taxes, and the state derives its title to the westerly half from that sale by deed dated June 9, 1881, and by another tax sale of 1881 by deed dated October 31, 1884, and by another tax sale of 1885 by deed dated February 15, 1890. The predecessors in title of the defendant on October 17, 1879, redeemed from the tax sale of 1877 the following part of said quarter section: "The easterly one-half, excepting 400 acres northeast corner, resident, 3,550 acres," and the deed to the plaintiff thereafter upon the same tax sale describes the premises granted: "The northeast quarter of township 24, west one-half, containing 3,750 acres." The other deeds to the plaintiff contain the same description. All of the tax sales seem to have sold the whole quarter, but the westerly half, belonging to the state, was not then subject to further tax sale, though the easterly half was. Wells v. Johnston, 171 N. Y. 324, 63 N. E. 1095.

Upon this second tax sale the description included all the quarter township except 400 acres of resident land in the northeast corner thereof. It then describes particularly the resident land, and shows that the westerly boundary of the westerly parcel is two miles distant from the east boundary of said township. November 21, 1883, the easterly half was redeemed from said tax sale under the description: "Township 24, northeast quarter, east one-half, except 400 acres in the northeast corner, resident land, 3,550 acres." It is clear that under the deed to the state it could only get title to the land which had not been redeemed from the tax sale, and the same is true as to the other conveyances. So that, if we determine what was redeemed, it is evident that the nonresident land in the remainder of the quarter township belongs to the state, for the state could not get title to the redeemed land, as no tax was then due upon it, and no authority existed for a deed thereof, as the sale had been canceled.

We have seen that the westerly boundary of the resident land is two miles distant from the easterly corner of the township, and at this westerly boundary of the resident land we find the Gilcrist or Colvin line coinciding with that westerly boundary, and continuing in a straight line to the south bounds of the quarter. It consists of a well marked and known line of blazed trees. The blazes are apparently upward of 50 years old, and mark an old survey; and in 1897 this line was recognized and reblazed by the superintendent of the Adirondack survey, a state official, as the well-marked line separating the easterly and the westerly half of the township. And such officer, in his report to the Legislature, which by law he was required to make, states that it is such line. It will be noticed that if the McClintock line, or any other line east of the Colvin line, is recognized as the division line, it will necessarily divide the resident land, leaving the greater part of it in the easterly half and another part in the westerly half. The deed to the state of the westerly half does not except or refer to any resident land, raising the fair inference that there was no such land in that half, and that the entire half passes by deed as nonresident land. The easterly half, however, by the redemp-

tion certificates, is stated as containing the 400 acres of resident land. This resident land is not stated to be excepted from the quarter, but from the east half of the quarter, and it is well understood that an exception in a deed means that by the exception something is prevented from passing which would otherwise pass. In other words, the thing excepted is included in the general description, but the exception removes it. So that a conveyance of the east half of the quarter township, excepting the 400 acres, is an unequivocal declaration that the 400 acres is a part thereof. The fact that the Colvin or Gilcrist line coincides with the westerly boundary of the resident land, and that the resident land is excepted from the east half, tends strongly to show that this line was an old survey, and was made and recognized as the dividing line between the east and west half, and, the redemption taking place when there was no other line known or claimed to exist, the words "easterly half" in the certificate and "westerly half" in the plaintiff's deed means the land east and west of that line, respectively, and not the mathematical east and west half. The deeds and redemption certificates make the halves unequal—the westerly 3,750 acres, the easterly 3,950 acres—showing that mathematical halves were not contemplated.

But it is urged that the old deeds and certificates recognize that there is 7,100 acres of nonresident land in this quarter of the township, which, with the resident land, makes 7,500 acres in all, and that the redemption certificate only redeems 3,550 acres, thus showing, as it is claimed, that the expression in the certificate, "except 400 acres in the northeast corner of resident land," excepts it from the quarter township, rather than from the east half of the quarter township. At this time, and at all times since until the McClintock survey, the nonresident acreage was unknown, and wrong figures were adopted, and therefore the figures adopted are but little aid in determining the questions here. But the tendency of the figures is not that way, for, if the 400 acres are excepted from the quarter township before the division, the defendant's half of the nonresident land would be 3,550 acres, the amount mentioned in the certificate, which, added to the 400 acres, would make 3,950 acres in the east half and leave 3,550 acres in the west half, while the deed to the plaintiff calls for 3,750 acres. If the division into halves refers to the nonresident land in the quarter section rather than all the land in the section, it must necessarily move the dividing line about 400 acres toward the west from the mathematical center. This would show clearly that the McClintock line is not the proper line, as it gives the plaintiff 3,946 acres and the defendant 3,546 acres, and proves that the Colvin line is a much nearer division than it would otherwise seem to be. As is usually the case in these old surveys, the actual measurement produces a greater acreage than the survey calls for, and the Colvin line now gives to the plaintiff 3,539 acres, or within 211 acres of the call in the deed, while the defendant gets 3,953 acres, or about 403 acres more than the redemption certificate calls for. The excess of land over the old survey must be considered as arising from general causes, and it would be unfair to allow the whole of the increase either to the plaintiff or the defendant. It

is fair to assume that the acreage on both sides of the dividing line has increased about proportionately. These clearly are not sufficient discrepancies to prevent the Colvin or Gilcrist line from being considered the dividing line between the east and west halves of the quarter township or the east and west half of the nonresident land therein. It thus seems that the state did not own the land east of this Colvin line, and the two subsequent deeds to the state, after like redemption, show pretty plainly a continued recognition of that line. And while plaintiff contends that the Colvin certificate is not sufficiently authenticated to be legal evidence as to the correctness of the line, it is at least evidence that a public officer of the state charged with the duties of surveying this line recognized such line as the line between the easterly and westerly half, and reblazed it and treated it as such.

The state, by chapter 627, p. 1480, of the Laws of 1898, authorized the Superintendent of Public Works to enter upon and take possession of any lands in the easterly half of said quarter township which was necessary for the construction and maintenance of the dam contemplated thereby. And thereafter the State Engineer and Surveyor served upon the defendant, pursuant to such statute, a map describing the appropriated land, and bounding it on the west by a line which is in fact the Gilcrist or Colvin line, thereby recognizing it as the dividing line between the east and west half. If the plaintiff's version is right, the state was taking a part of its own lands by proceedings against this defendant. The Saranac Land & Timber Company brought an action against the comptroller to recover the westerly half of this quarter township, which action was defended by the Attorney General, and the defense relied upon in the answer was the state's title under these deeds, the answer further alleging that none of the resident lands were situated in the west half. This act seems to be another recognition by the public officers of the state of this Colvin line. It is contended, however, by the plaintiff that the words "east half" and "west half" mean the mathematical halves, and therefore that the McClintock line is the correct line. But, as stated above, if the exception of the 400 acres is from the whole quarter township rather than from the east half of such quarter, then the redemption was clearly of the east half of the nonresident land in the township, and the McClintock line would clearly not be the dividing line. The words "east half" and "west half" in a deed, while naturally importing an equal division, may lose that effect when it appears that at the time some fixed line or known boundary or monument divides the premises somewhere near the center, so that the expression more properly refers to one of such parts than to a mathematical division which never has been made. The expression in the deed is controlled by the situation existing upon the premises themselves, and the manner of their use, and the monuments and boundaries existing. "But where the grant was of the west half of a lot it was held to be open to explanation by the situation of the lot when conveyed, the manner in which the parties then occupied it, although a north and south line would materially vary from the line as then established." 3 Washb. Real Prop. 352, upon the authority of Schmitz v. Schmitz, 19 Wis. 210, 88 Am. Dec. 681. To the same effect, Jones

v. Pashby, 48 Mich. 637, 12 N. W. 884. "The rule is well settled that a conveyance is to be construed in reference to its visible locative calls as marked or appearing upon the land, in preference to quantity, course, or distance; and any particular may be rejected if inconsistent with the other parts of the description, and sufficient remains to locate the land intended to be conveyed." Robinson v. Kime, 70 N. Y. 147, 154. But here the fact that all of the resident land is described as being in the east half, and all the west half is conveyed to the state as nonresident land, and that the westerly line of the resident land coincides with the old survey, is very strong evidence that this old survey is the dividing line, and that the reference to the east half and to the west half refers to that line. While it does not appear who made that survey, its years are in its favor, and no other reason is suggested why a line should be blazed north and south in this locality unless it was intended for this purpose. The blazed line is a fixed and well-known line—a monument, as it were—intended to mark the center line, and the land east of it is the east half and on the west of it the west half of the quarter township. And we must assume that the redemption certificate was made with reference to this dividing line, for otherwise the exception of the resident land is meaningless, while, if so recognized, it has full effect. "It is the settled rule in this state, resting upon public policy, that a practical location of boundaries which has been acquiesced in for a long series of years will not be disturbed." Katz v. Kaiser, 154 N. Y. 292, 298, 48 N. E. 532.

A record of a quitclaim deed is produced from the Saranac Land & Timber Company to Erminy P. Hall, a predecessor in the defendant's title, dated June 12, 1895, which covers a part of the said easterly half, and makes the line running from the east to the west extend "to the center line of the said quarter township as located and surveyed by H. K. Averell in or about March 1889"; also a record of a quitclaim deed from her to the company, of the same date, of the westerly half of said quarter township; and it is claimed that thereby she recognized the Averell line as the dividing line. But the circumstances of those transactions are not disclosed. At the time these quitclaim deeds were made the Averell line was marked upon a map, and was an easy way of distinguishing the land referred to therein. I cannot say that by this transaction she conveyed to the company all her interest in the land west of the Averell line, or that these quitclaims are a recognition of that line as the true line between the east and west halves. They indicate simply a transaction based upon the Averell map long after the state acquired its title, and it is conceded by all that the Averell line is not in any way a proper division between the east and west halves. The plaintiff must recover upon the strength of its own title, and not upon the weakness of the defendants'. It is therefore immaterial here what the particular nature or effect of that transaction between her and the company was.

I therefore hold that the resident land is all in the east half of the quarter of said township, and that the Gilcrist or Colvin line running north and south along the westerly boundary of the westerly parcel of resident land is the dividing line between the easterly and westerly

half, and that the plaintiff has not title or right of possession of any of the land in said quarter township east of that line. The complaint is therefore dismissed, with costs.

Complaint dismissed, with costs.