Kinsey *et al.* v. Satterthwaite.

No. 9829.

## KINSEY ET AL. *v.* SATTERTHWAITE.

BILL OF EXCEPTIONS.—*Practice.*—Exceptions must be reduced to writing at the term at which they are taken, unless, at that term, further time be given.

BOUNDARIES.—*Establishment of Lines by Agreement and Occupancy.*—*Fences.*—*Evidence.*—*Notice to Purchasers.*—Owners of conterminous lands may, by oral agreement and occupancy, so fix the boundary line between their lands as to bind themselves; and if such line be marked by a fence, and each occupies to the fence, it will be notice to purchasers.

DEED.—*Description.*—*Construction.*—*Survey.*—A deed describing the lands conveyed as "the north half of the southwest *undivided* quarter of section," etc., means the half, in quantity, of the quarter section, and not the north half as determined by the survey of the U. S. Government.

From the Huntington Circuit Court.

*J. C. Branyan, C. W. Watkins* and *M. L. Spencer,* for appellants.

*J. B. Kenner* and *S. M. Sayler,* for appellee.

MORRIS, C.—This is an appeal from a survey. The appellee alleges in his complaint that he is the owner of the south half of the southwest quarter of section twenty-six, in township twenty-seven north, of range eight east, in Huntington county, Indiana, containing $72\frac{64}{100}$ acres more or less; that said south half of said quarter section is the full half of the whole number of acres in said quarter, which is $145\frac{28}{100}$ acres, and is not the half thereof according to the government survey. It is alleged that at a time prior to the 1st day of November, 1852, John W. Thomas, who then owned said fractional quarter section, intending to divide the same equally between his two sons, James Thomas and William Thomas, conveyed to the said James, on the 21st day of July, 1849, the north half of the number of acres in said quarter section, by the following description, to wit: The north half of the southwest fractional quarter of section twenty-six, in township twenty-seven north, of range eight east, intending to convey thereby the north $72\frac{64}{100}$ acres of said quarter section.

It is further alleged that on the 1st day of November, 1852, the said John W. Thomas conveyed to said William Thomas the south half of said quarter section, containing 72 $\frac{64}{100}$ acres more or less; that the said James and William Thomas, agreeing with the said John Thomas and with each other, that the boundary line between said tracts should be so located as to give each of them an equal number of acres, fixed the same accordingly, and placed upon a large part of said line a fence, which still remains in its original position; that the plaintiff, and those under whom he holds, have cleared the land up to a portion of said line so agreed upon and indicated by said fence, which was located and the improvements made more than twenty years ago; that the defendants claim the north half of said fractional quarter, as the same should be determined by the rules governing the surveys of public lands, and claim the ownership of a strip eight and a half rods wide, lying on and along the south side of said agreed boundary line, the whole length of said quarter, east and west, and proceeded, in June, 1879, to have the same surveyed by the surveyor of Huntington county, in accordance with their claim, whereby the plaintiff is wronged out of 8½ acres of land. The prayer is that the survey be set aside and that the appellee's title to the south half of said quarter in quantity and number of acres be quieted, etc.

The surveyor, who was made a defendant, answered, admitting the survey, and asking to be discharged. The other defendants answered by a general denial, with an agreement that all defences might be given in evidence under it.

The cause was submitted to the court for trial, at its October term, 1880, and, after hearing the evidence, the court took the case under advisement until the next term, at which term it found in favor of the plaintiff below.

The appellant then filed a motion for a new trial, which was overruled, and final judgment rendered in favor of the appellee, giving the appellants sixty days within which to file a bill of exceptions. Within the time limited the appellants

filed their bill of exceptions, containing the evidence given in the cause.

The overruling of the motion for a new trial is assigned as error. The appellants insist that the court below erred in admitting certain testimony over their objections, and to the admission of which they excepted at the time. But no exceptions to the admission of testimony upon the trial has been properly preserved. The record shows that the appellants objected to the oral testimony of several witnesses; that their objections were overruled, the testimony admitted by the court, and exceptions taken at the time. But it is also shown by the record that this occurred at the October term of said court, 1880, and that no time was given at that term to reduce those exceptions to writing, nor was any bill of exceptions filed at that term. The law requires that the exceptions be reduced to writing at the term at which they are taken, unless time be given at that term to reduce them to writing. Time, in such cases, can not be given at a subsequent term. *Supreme Lodge, etc.,* v. *Johnson,* 78 Ind. 110; *Sohn* v. *Marion, etc., G. R. Co.,* 73 Ind. 77. The only question properly reserved is, is the finding of the court sustained by sufficient evidence?

It appears from the evidence that John W. Thomas, from whom all parties derive title, owned the southwest fractional quarter of section 26, in township 27 north, of range 8 east, in Huntington county, Indiana; that on the 21st day of July, 1849, John W. Thomas and wife conveyed to their son, James Thomas, a part of said fractional quarter by the following description: "The north half of the southwest undivided quarter of section 26, township 27 north, of range 8 east;" that on the 1st day of November, 1852, the said John W. Thomas and wife conveyed a part of said fractional quarter to their son, William Thomas, by the following description, to wit: "The south half of the southwest quarter of section 26, township 27 north, of range 8 east."

The appellee claims, through several intermediate convey-

ances, the land conveyed by John W. Thomas and wife to
William Thomas, the description in each of said conveyances
being substantially the same. It is also shown by the evidence
that the appellants claim the land conveyed by John W.
Thomas to James Thomas, by intermediate conveyances, the
description in each being the same as in the deed from John
W. Thomas to James Thomas, except that in the subsequent
deeds the word " undivided" is omitted. It is also shown
that in 1854, after the conveyances had been made by John
W. Thomas to his sons James and William, they engaged a
surveyor by the name of Calvert to run a line east and west
through said quarter, so as to divide the same into equal parts,
it being their understanding that their father had conveyed
the same number of acres to each. The line was run, and a
fence extending fifty rods was built by the brothers on said
line, and each made improvements on his half of the land,
extending to said fence, as the boundary between them.

James Thomas testified that his father intended to give to
him and to his brother William equal parts of said quarter,
and that they both so understood it, and that the deeds did,
in fact, convey to each the same quantity of land, and that
said line was run in accordance with that understanding; that
each claimed to said fence, and that since he conveyed his part
to Early Kinsey it has been claimed to said fence. He fur-
ther testified that he sold to Kinsey $72\frac{30}{100}$ acres, at so much
per acre. This is denied by Kinsey. James Thomas further
testified that said fence, built by him and his brother on the
line established by Calvert, was standing when he sold, and
the land cleared up to the fence on both sides and cultivated
by him and his brother. He cultivated to the fence on the
north side and his brother to the fence on the south side.

William Thomas' testimony was substantially the same as
that of James Thomas. There was some conflicting testimony
—some opposed to that introduced by the appellee, and some
in corroboration of it.

The appellee testified that he had known the land ever

since 1850; that the line run by Calvert had never been questioned until 1878, when Kinsey said it had not been recorded and that he wanted a survey of the land and a record of it.

A copy of the plat of said fractional quarter section, duly certified by the Auditor of State, was put in evidence, as follows:

On the 6th day of January, 1875, Early Kinsey and wife conveyed a portion of said fractional quarter to Mary Bradford, by the following description: "The west portion of the southwest quarter of section 26, in township 27 north, of range 8 east, containing $72\frac{64}{100}$ acres, according to government survey." This is the only conveyance shown to have been made by Early Kinsey of any portion of said land.

The appellants insist that by the deeds made by John W. Thomas to his sons James and William, the quantity of land conveyed to each is certain and fixed. Counsel say: "We claim that by these deeds the boundaries are well defined. The government survey fixed them. The line dividing the north half from the south half is a line starting at a point on the west line of said quarter section, equidistant from the northwest and southwest corners of said quarter, and running thence east to the river, as shown on the plat of the original survey."

Grant this, the question remains was it competent for James and William Thomas, in view of the facts testified to by them, to bindingly fix, as between themselves, a boundary line between the tracts of land conveyed to them respectively, so as

to give each an equal quantity of said fractional quarter sec-
tion? If so, did they in fact establish such boundary? If
they did, was it so established as to put subsequent purchasers
from either upon enquiry as to its existence, and the rights
of those occupying the land on each side of said boundary?

The first question does not, we think, admit of much doubt.
If, as they both testify, it was the intention of the father to
give to the sons an equal portion of said quarter section, and
he and they understood, that by the description in their re-
spective deeds this purpose had been accomplished, though,
by giving to the words of description a technical meaning,
this purpose had not in fact been effected, it was altogether
competent for the grantees, by agreeing upon a line as the
boundary between the tracts conveyed, to conform their in-
terests to the actual intention of all the parties. To do this
would be commendable, and in violation of no law; and when
the line was agreed upon and established, and improvements
made by them with reference to it, it became binding upon
the parties; and, as showing the purpose for which the Calvert
line was run, though the question is not in the record, we may
say that we think that it was altogether competent and proper
to prove, by parol evidence, the understanding with which
the deeds to James and William Thomas were made and ac-
cepted. The line was intelligently agreed upon with a view
to secure to each the quantity of land which was intended to
be conveyed to each; and the fact that each acted with refer-
ence to this line, cleared up to it and made improvements
upon the strength of its permanence, made it forever binding
upon the parties. *Makepeace* v. *Bancroft*, 12 Mass. 469.

Was the line so established as to put subsequent purchasers
upon enquiry as to its existence and meaning? A fence, some
fifty rods in length, was built upon the line run by Calvert.
This fence was notice to all of its existence, and if the land
south of the line upon which the fence stood was occupied and
cultivated by William Thomas and his grantees, and that on
the north side of the fence by James Thomas and his grantees,

such occupancy would be sufficient to put subsequent purchasers upon enquiry as to the rights and interests of the occupants. We think the testimony in the case legally tended to show that, at the time Early Kinsey purchased from James Thomas, the south half of the quarter of land in question, as indicated by said fence, was in the adverse possession and occupancy of another, and that by reasonable enquiry he might have ascertained the actual rights and interests of those in possession of it. James Thomas swears that in fact he only sold to Kinsey $72\frac{30}{100}$ acres. This, though denied by Kinsey, tends to support the finding of the court. And it is greatly strengthened by the fact that in the deed made by Kinsey to Mary Bradford the quantity of land conveyed is stated to be $72\frac{64}{100}$ acres.

It is said by the appellant that there is no testimony in the case showing that that portion of the land south of the Calvert line contained $72\frac{64}{100}$ acres, or how many acres it did contain. The testimony shows that the fractional quarter in question contained $145\frac{28}{100}$ acres, and that the Calvert line divided it into equal parts. The testimony also shows that the appellants claimed, by the survey appealed from, a portion of the land south of said line. The testimony in this respect is entirely sufficient.

The description in the deed of John W. Thomas and wife to James Thomas, to which the appellants are privies, and of the contents of which they will be presumed to have knowledge, is " The north half of the southwest undivided quarter," etc. Is the word " undivided " senseless and without meaning, as used in this deed? If the grantor intended to convey the north half of said quarter, according to the government survey, and as indicated by the lines drawn upon the plat of the original survey, the word had no meaning at all, and it is, upon that assumption, impossible to conceive of anything that could have suggested its use. If, however, the grantor intended to convey one-half the quantity of land contained in said quarter to James Thomas, there was no line dividing it

from the south half of said quarter, and, with this under-standing, the quarter was " undivided ;" that is, there was no existing division of it indicating the parts conveyed to his sons.  It was in this sense, we think, and for the purpose of conveying one-half the quarter in quantity, that this word was used.  We think, also, that to make the words of description used equivalent to a conveyance of the north half of said quarter, according to the assumed government survey, would require us to reject, as meaningless, the word " undivided," which is a part of the description.  We think that the use of this word forbids the construction insisted upon by the appellant, and fairly justifies such a construction as will agree with and carry out the intentions of all the parties.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of the appellant.