## EDINGER *v.* WOODKE.

BOUNDARIES—SURVEYS—FRACTIONAL QUARTER SECTION.

> Where plaintiff and defendant acquired title to the east half and the west half, respectively, of a fractional quarter section of land, which, by the government survey, was divided by a line equidistant from the east and west boundary lines of the subdivision, such line constituted the dividing line between their respective parcels.

Error to Berrien; Smith (Harsen D.), J., presiding. Submitted March 8, 1901. Decided June 4, 1901.

Trespass *quare clausum fregit* by Jacob L. Edinger against August Woodke and Henry Woodke. From a judgment for plaintiff, defendants bring error. Affirmed.

*O'Hara & O'Hara* and *Edward Bacon*, for appellants.

*Lawrence C. Fyfe*, for appellee.

LONG, J. This action was brought in justice's court to recover damages for an alleged trespass upon certain lands described in the declaration, and claimed to be owned by plaintiff, and of which he was then in possession. The declaration alleges, substantially, that the defendants on, to wit, September 15, 1896, stretched some barbed wire across and upon a portion of the land described in the declaration, and that about a year afterwards plaintiff's cows were injured by these barbed wires. The defendants pleaded title, and the cause was removed to the circuit court for trial. On a trial before a jury, plaintiff had verdict and judgment. Defendants appeal.

On the trial the defendants did not deny that they entered upon the land as claimed by plaintiff, and then and there erected and put up a line of wire fence; but they did deny that the place where it was put up was the close of the plaintiff, or land of which he was in possession.

The plaintiff and defendants own adjoining farms, all on section 2.  The description of the land in the deeds under which plaintiff claims is the E. ½ of S. E. ¼ of section 2. The defendants' land is described as the W. ½ of S. E. ¼ of section 2.  This quarter section was surveyed in 1829 by the government, and is designated in the field-notes as the S. E. fractional ¼ of section 2.  It fronts at the north what was called "Pottowattomie Lake," which was a widening or overflowing of the Galien river.  The field-notes show that this lake was meandered, making that quarter section fractional.  It is evident from the testimony that at the time of the survey this lake or swamp (sometimes called "Pegwood Swamp") was covered with water; but many years since the waters receded, and the swamp has been used for farming purposes.  Some of it has been cultivated, and other, portions have been used for pasturage.  The plaintiff went into possession of the E. ½ of the quarter section some 29 years ago, and the defendants into possession of the W. ½ of the quarter section at an earlier period.  There has been a line fence between these two 80 acres from the south up to Pegwood swamp for many years.  North of this swamp, and from the edge of it to the river bank, there has also been a fence between the farms; but whether that fence was built on the line between the farms is in some dispute.  This fence was about 19 rods in length.  It is conceded that the wire fence was built, commencing south of the south end of this 19-rod fence, and extending in a diagonal direction southwesterly through that portion of the swamp.

The court instructed the jury:

"There has been a line fence dividing the plaintiff's land from the land west of his land, running a large portion of the distance between said farms, for a good many years.  Under these circumstances, and under the facts in this case, I instruct you that the plaintiff would own all that part of the east half of the east half of section 2 lying south of the Galien river; that is to say, his land would be bounded on the north by the Galien river, on the east by the east line of section 2, on the south by the

south line of section 2, and on the west by a line running north and south equidistant from the east side of said section and the east side of the west half of said section, except that the north end of the west line, for about 19 rods thereof, had a line fence running from the north end of what has been called the 'Pegwood Swamp' to the river; and it is conceded that the land where the diagonal fence or wire was strung, and where the alleged trespass was committed, was at some place south of this 19-rod fence. If the jury find that the barbed wire in question, or any portion of it, was erected upon the east side of the line running north from a point on the south line of said section equidistant between the southeast corner of said section and the south quarter post of said section, then the said wire fence was upon the plaintiff's land, and he can recover, unless he consented to the wire being placed there."

Defendants' counsel contend that the court was in error in this charge; that the word "half" in plaintiff's deeds means half in quantity, and is a limitation which caused his west line to be no farther west than would be necessary to bound half in quantity. It is conceded by counsel for plaintiff that the usual construction of the word "half" is one-half in quantity; but it is claimed that, when it is used in describing a government survey, the terms "east half" and "west half" are not used with reference to quantity, but with reference to a line which is equidistant from the boundary lines of the parcel subdivided.

This question was discussed in *Jones* v. *Pashby*, 62 Mich. 614 (29 N. W. 374). It was said:

"It is contended by defendants that in surveys of the public lands by the United States government the terms 'east half' and 'west half' are used, not with reference to the quantity, but with reference to a line which is equidistant from the boundary lines of the parcel subdivided, and that the patents are issued by the government in which the term has the same signification. This is true because it is authorized and especially provided for by act of Congress. A conveyance containing a description of the east half or west half of a parcel of land which purported to be according to the United States survey

would be definite, and exclude the idea of two equal quantities, but would convey the idea and intention of fixing the dividing line in accordance with the act of Congress."

Counsel for defendants cite the cases of *Hartford Iron-Mining Co.* v. *Cambria Mining Co.*, 80 Mich. 491 (45 N. W. 351), and *Grand Rapids Ice & Coal Co.* v. *South Grand Rapids Ice & Coal Co.*, 102 Mich. 235 (60 N. W. 681, 47 Am. St. Rep. 516, 25 L. R. A. 815), as sustaining their contention. On examination of those cases it will be seen, however, that the question presented here did not enter into those cases. In *Hartford Iron-Mining Co.* v. *Cambria Mining Co.*, *supra*, the rule laid down in *Jones* v. *Pashby* was recognized. In the present case the government itself, as appears by the tract book, divided this S. E. ¼ as contended by the plaintiff. The S. ½ of the quarter is divided into two square 40 acres, and the line between these two 40's is equidistant between the east and west lines of the quarter section; and this line is continued, as appears by the tract book, north to the meander line. This fact and the other facts contained in the record were undoubtedly in the mind of the court in giving his instructions to the jury. It also appears by the tract book that these two north 40's were denominated "fractional," thus making the plaintiff's north 40 contain 53.35 acres, and defendants' 47.40. We think, therefore, the court was not in error in his directions to the jury.

The court also left it to the jury to determine whether the plaintiff had acquired the lands in controversy by an adverse holding, and we think his instructions in reference thereto stated the law.

The question as to the measure of the plaintiff's damages, if any, was also left to the jury under a very full and fair charge.

Many other questions are raised by counsel for defendants. We have examined them all, and find no error prejudicial to defendants.

The judgment below must be affirmed.

The other Justices concurred.