W. C. GUNN *Appellant,* v. D. M. BROWER, *Appellee.*
No. 16,042.

### SYLLABUS BY THE COURT.

TAX DEEDS—*Description of Land.* Where, by reason of the deficient acreage of a congressional township, a quarter section thereof is divided by the government survey, in accordance with the usual practice, into an eighty-acre tract and two numbered lots, each containing somewhat less than forty acres, one of such lots is sufficiently described in a tax deed as a quarter of the quarter section.

Appeal from Kiowa district court; GORDON L. FINLEY, judge. Opinion filed December 11, 1909. Affirmed.

*J. W. Davis,* and *Keene & Gates,* for the appellant.

*L. M. Day,* for the appellee.

The opinion of the court was delivered by

MASON, J.: A tax deed, not challenged except as to the sufficiency of the description, purported to convey "the south half of the southwest quarter of section 7" in a designated township and range. The district court sustained the holder's claim of title to land properly described under the government survey as "lot 4 and the south half of the east half of the southwest quarter" of that section. The only question presented is, Was this error?

The township in which the land is situated is slightly deficient in acreage. Under the federal statute (Rev. Stat. U. S. §§ 2395-2397) the deficiency was distributed among the sections of the northern and western tiers. The northwest and southwest quarters of section 7, therefore, were irregular in shape, or, as the term is sometimes used, "fractional." The east eighty acres of each of these quarters formed a tract known as the east half thereof. Each quarter was further subdivided by a line running east and west equidistant from

its northern and southern boundaries, dividing the east half into two equal parts, and the remainder of the quarter section into two parts not necessarily of exactly equal area. The tract corresponding to what would have been the exact southwest quarter of the southwest quarter of section 7, if it had been of full size, was designated on the official plat as lot 4, containing 36.55 acres. The tract north of it, designated as lot 3, contained 36.60 acres. This arrangement was not arbitrary or accidental, but resulted from the established practice of the government surveyors, under the regulations of the commissioner of the general land office. (Manual Surv. Inst. Surv. Pub. Land [1902], p. 11, § 99, subdiv. 5; I Lester's Land Laws, Reg. & Dec. pp. 706, 722, 723.) As already stated, the technically correct description of the land claimed by the holder of the tax deed would be "lot 4 and the south half of the east half of the southwest quarter" of section 7. The question to be determined is whether the formula actually used—"the south half of the southwest quarter"—amounts to the same thing.

There is no difficulty in saying that the phrase "the southwest quarter" of section 7 means the tract indicated on the official plat most nearly responding to that call, notwithstanding it does not contain 160 acres, nor one-fourth of the area of the entire section. (*Brown & wife v. Wm. & Benjamin Hardin,* 21 Ark. 324, 327; *William K. Lente v. Brent L. Clarke, Adm'x,* 22 Fla. 515, 525.) But the language of the deed where it speaks of "the south half" of this quarter section is open to two possible constructions. It may refer to the exact south half according to the actual acreage, or it may refer to one of the two substantially equal parts into which the quarter section is divided by the east-and-west line of the government survey. If it is impossible to tell which is intended the deed may be void for indefiniteness. Where there is nothing to suggest the contrary the word "half," in connection with the con-

veyance of a part of a tract of land, is interpreted as meaning half in quantity. (*Owen v. Henderson*, 16 Wash. 39; *Cogan v. Cook*, 22 Minn. 137, 142; *Hartford Mining Co. v. Cambria Mining Co.*, 80 Mich. 491; *Jones v. Pashby*, 62 Mich. 614.) But where a tract has previously been in some manner divided into two parts of approximately equal size the usual presumption is that one of these parts is referred to.

"The words 'east half' and 'west half' in a deed, while naturally importing an equal division, may lose that effect when it appears that at the time some fixed line or known boundary or monument divides the premises somewhere near the center, so that the expression more properly refers to one of such parts than to a mathematical division which never has been made. The expression in the deed is controlled by the situation existing upon the premises themselves, and the manner of their use, and the monuments and boundaries existing." (*People v. Hall*, 88 N. Y. Supp. 276, 279.)

(See, also, *Grandy v. Casey*, 93 Mo. 595; *Schmitz v. Schmitz*, 19 Wis. [\*207] 222.)

This principle is applied where one of the lines of the government survey effects such a division. (*Prentiss v. Brewer*, 17 Wis. 635. See, also, *Edinger v. Woodke*, 127 Mich. 41; *Kinsey et al. v. Satterthwaite*, 88 Ind. 342; *Turner v. The Union Pacific Ry. Co.*, 112 Mo. 542, 545.) It is not carried so far, however, as to involve an assumption that one who conveys the half of one of the smallest governmental subdivisions—a lot or a "forty" —intends anything else than a division into equal parts. He is not presumed to have in mind a further partition of this surveyor's unit—the smallest "legal subdivision" (*Hopper v. Nation*, 78 Kan. 198)—by an extension of the method by which it was created. (*Cogan v. Cook*, 22 Minn. 137, 142; *Jones v. Pashby*, 62 Mich. 614.) Possibly the rule referred to ought not to apply to tracts that are "fractional" in the sense that they are irregular in shape because of the existence of a body of water or some other like obstacle, so that they can con-

form to no general rule. (*Goltermann v. Schiermeyer,* 111 Mo. 404, 416.) But it is rightly invoked in such a case as this, where the only irregularity is that common to practically all tracts along the northern and western boundaries of a township. Lot 4 of section 7 is commonly and intelligibly described as "the southwest quarter of the southwest quarter," just as the "southwest quarter" itself is designated by that term notwithstanding its area is less than 160 acres. We hold that the deed to "the south half of the southwest quarter" passed title to lot 4 and the south half of the east half of the southwest quarter.

The situation here is obviously different from that presented in *Kruse v. Fairchild,* 73 Kan. 308. Here the subdivision of the section is normal, the numbered lots correspond to the usual forty-acre tracts of a full section, and there is no room for doubt as to what is meant by the "southwest quarter." There the section (one of the north tier) contained six lots. That numbered 1 lay north of numbers 3 and 4, and that numbered 2 lay north of numbers 5 and 6. The deed did not describe with technical accuracy the property intended to be conveyed. And regarding its language as employed colloquially the phrases "the northeast quarter" and "the northwest quarter" were ambiguous. Whether they were intended to include lots 1 and 2 could not be told with certainty, and the description was therefore held insufficient.

The judgment is affirmed.