No. 41,081

Eva Brewer, *Appellant*, v. James E. Schammerhorn, *Appellee.*

(332 P. 2d 526)

Opinion filed December 6, 1958.

H. W. *Goodwin*, of Wichita, argued the cause, and *Guy L. Goodwin*, also of Wichita, was with him on the brief for appellant.

*Jimmie E. Grey*, of Wichita, argued the cause, and *Dwight S. Wallace, Donald C. Tinker, Jr., William C. Attwater, Getto McDonald, William Tinker, Arthur W. Skaer, Jr., Hugh P. Quinn*, and *William Porter*, all of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action in ejectment tried to the court upon waiver of a jury by both parties. From a decision and judgment adverse to the plaintiff appeal has been properly perfected to this court presenting the questions hereafter discussed.

The controlling question presented is whether a deed conveying the South Half of a long quarter section of land, previously divided by a conveyance of the North 80 acres *precisely*, conveys all the remaining tract in the hands of the grantors or only a quantitative one-half mathematically.

With a few exceptions, which will be noted, the facts pertinent to the issue in this case are uncontradicted and have been established either by stipulation of the parties or testimony.

Prior to March 3, 1902, James McKenna and Matilda J. McKenna, his wife, were the owners of all of the Southeast Quarter of Section 31, Township 29, Range 4 West of the Sixth Principal Meridian in Sedgwick County, Kansas. They also owned other real property in the same township. The quarter section of land described was a "long" quarter containing 163.69835 acres.

On March 3, 1902, the McKennas deeded to John E. Schammer-horn, appellee's predecessor in title, the *North 80 acres "precisely"* of the above described "long" quarter section of land. On July 30, 1908, James McKenna applied to the county surveyor of Sedgwick County to make a survey and establish the corners of the North 80 acres of said quarter section of land. This survey was made pursuant to statute upon notice to all parties concerned and duly made a part of the Surveyor's Permanent Record in the office of the County Surveyor of Sedgwick County. This survey correctly established the corners of the North Eighty and it contained precisely 80 acres. Cornerstones were set to mark the established corners.

On February 6, 1913, the McKennas gave a deed to D. F. Rowan, father of the appellant, Eva Brewer, conveying the South Half of the Southeast Quarter of Section 31 (the same being part of the quarter section above described) and the South Half of the Southwest Quarter of Section 32 (also owned by the McKennas and adjoining east of the foregoing tract in Section 31, but not involved in this case), *"containing 160 acres, more or less."*

The question at this point is whether the deed to Rowan in 1913 conveyed all of the 83.69835 acres which remained in the long quarter section heretofore described and owned by the McKennas. The land in dispute in this lawsuit is a strip 27.8 feet wide by one-half mile long containing 1.849175 acres which lies immediately south of and adjacent to the south line of the North 80 acres established by the survey of 1908.

Appellee contends that the deed in 1913, whereby the McKennas deeded the South Half of the Southeast Quarter of Section 31 to D. F. Rowan, conveyed only the South Half of the long quarter quantitatively. In other words, it is asserted that D. F. Rowan received only 81.849175 acres by the conveyance.

Several cases have been before this court on the point in question. The Kansas law was first announced in *Gunn v. Brower,* 81 Kan. 242, 105 Pac. 702:

". . . Where there is nothing to suggest the contrary the word 'half,' in connection with the conveyance of a part of a tract of land, is interpreted as meaning half in quantity. (*Owen v. Henderson,* 16 Wash. 39; *Cogan v. Cook,* 22 Minn. 137, 142; *Hartford Mining Co. v. Cambria Mining Co.,* 80 Mich. 491; *Jones v. Pashby,* 62 Mich. 614.) But where a tract has previously been in some manner divided into two parts of approximately equal size the usual presumption is that one of these parts is referred to.

" 'The words "east half" and "west half" in a deed, while naturally importing an equal division, may lose that effect when it appears that at the

time some fixed line or known boundary or monument divides the premises somewhere near the center, so`that the expression more properly refers to one of such parts than to a mathematical division which never has been made. The expression in the deed is controlled by the situation existing upon the premises themselves, and the manner of their use, and the monuments and boundaries existing,' (*People v. Hall,* 88 N. Y. Supp. 276, 279.)" (pp. 243, 244.)

The foregoing case was quoted with approval in *Hoyne v. Schneider,* 138 Kan. 545, 27 P. 2d 558, which quoted in addition thereto 4 Thompson on Real Property, § 3153, as follows:

" '. . . The term "eastern one-half," in a deed conveying one-half of a tract of land, in the absence of admissible parol evidence disclosing a different intention, would mean the eastern half, formed by a line to be run due north and south through the tract; but if it appears that before the deed was executed a division into two parts, supposedly equal in area, had been made by a line, having a different bearing actually marked on the ground by stakes and fences, according to which possession had been held for a number of years, and the parties have since held possession according to such line, the words must be taken to mean the eastern one-half as so laid off and held in severalty.' " (p. 551.)

The Hoyne case also quoted from 18 C. J., Deeds, § 269, which now appears with minor changes as 26 C. J. S., § 104f, p. 901, as follows:

"Ordinarily a conveyance of half of a tract of land will be construed as a conveyance of a half in quantity, and a like rule has been recognized where other fractional units are referred to; but there is no universal rule that a conveyance shall be so interpreted; and, where the intent of the parties to employ the term 'half' as describing a particular tract other than a half in quantity is apparent from the context or surrounding facts and circumstances, it will be given such meaning. So, where a tract has previously been in some manner divided into two parts of approximately equal size, the usual presumption is that one of these parts is referred to. Where the description of a parcel forming part of a larger tract is otherwise sufficient, an inaccuracy in the statement of the proportion between the area of the parcel and that of the entire tract does not affect the title conveyed."

*Gunn v. Brower,* supra, was quoted in *McHenry v. Pence,* 168 Kan. 346, 212 P. 2d 225, but upon application of the rule it was determined by the court that there were no circumstances to indicate that a quantitative one-half was not intended.

Other facts in evidence before the trial court, not heretofore related, disclose the situation existing upon the premises themselves, the manner of their use, and clarify the existence of monuments and boundaries. After the original conveyance in 1902 by

the McKennas to John E. Schammerhorn of the North 80 acres "precisely," a fence was built dividing these two properties. This original fence remained in place until about 1915 when it was taken out because the grass immediately north of this dividing line had been plowed and the fence was no longer needed to graze livestock on the pasture. This fence dividing the "long" quarter section in question into two parts coincided with the survey of 1908. When the fence was removed the large hedge posts on the corner at both the east and west ends of the fence were permitted to stand to mark the dividing line.

At the time the McKennas conveyed the South Half of the Southeast Quarter of Section 31 in question to D. F. Rowan in 1913, *possession of the entire remaining tract containing 83.69835 acres, was delivered by the grantors to Rowan.* In fact, the evidence is clear and uncontradicted that possession of this entire tract consisting of 83 plus acres was in D. F. Rowan and his successors in title, who farmed it without challenge until December, 1953.

In December, 1953, Alvin Martin, appellee's tenant, complained that the Brewers had drilled wheat beyond the dividing line (established by the 1908 survey) and at the west end destroyed young alfalfa which was just coming up. Howard Brewer, husband of the appellant, in viewing the premises at that time with the appellee, admitted that his hired man had gotten beyond the line in turning the tractor and destroyed appellee's young alfalfa as disclosed. At this particular time upon viewing the premises the hedge post at the east end of this dividing line was still standing.

Appellee's tenant testified as follows:

"In my opinion, the alfalfa was planted down to a point of about four feet south of where the stake is now. It was down to where the old corner post stood over the years as near as I could put it. I tried to farm from the north down to the line that was marked with that corner post. I objected when I thought the Brewers were farming to the north across that. When they crossed over the line, it killed the alfalfa.

"The line separating the Schammerhorns from the Brewers land has always been at approximately the same point where that old corner post marked it."

Subsequent to this original dispute in 1953 the appellee procured a private survey which divided this long quarter into two equal parts, following which the appellee in 1954 constructed a fence along this new survey line which was 27.8 feet south of the 1908 survey line. This resulted in appellant's suit for ejectment.

The trial court's finding No. 9 reads:

"Plaintiff's and her predecessors' farming operations did not extend to any definite line but varied from year to year."

This finding is not supported by the evidence. Numerous witnesses testified concerning the boundary line recognized through the years in farming these two tracts of land. As a result of farming operations a ridge had been built up along the boundary line which was marked by the two corner posts where the old fence had originally been established. In fact, the only evidence to indicate that either of the parties had ever farmed across this line was the complaint in 1953 by the tenant of the appellee. This, it must be noted, is not the line in controversy. The line in dispute is located 27.8 feet south of the line which the old 1908 survey established.

This fact is *admitted* by the testimony of James E. Schammerhorn, appellee. He stated on cross examination:

"A few days after Christmas of 1953, I went to the Brewer home and told Mr. Brewer that my tenant had complained that Brewer had farmed over on my land and had drilled out some of the alfalfa. Mr. Brewer went out there with me. At that time when Mr. Brewer and I went out there, *the south edge of my alfalfa was 20 or 30 feet north of where my fence is now.*

"When I went out there with Mr. Brewer that day in December of 1953 my only complaint to him was that whoever had been running the farm machinery for the Brewers *had gotten over on my alfalfa. At that time I made no complaint to him that he was farming land that belonged to me."* (Emphasis added.)

While it is true several witnesses testified that the line to which farming operations were conducted on these two properties varied a little bit as a result of driving the farm machinery, they did make an effort to follow the ridge as closely as possible. This slight variation in farming up to the line, indicated by the hedge posts at each end, is immaterial insofar as the issue in this lawsuit is concerned.

Construing the deed of 1913 whereby the McKennas conveyed to D. F. Rowan the South Half of the Southeast Quarter of Section 31, here involved, and the South Half of the Southwest Quarter of Section 32, *"containing 160 acres, more or less,"* with reference to the situation existing upon the premises themselves, the manner of their use, and the monuments and boundaries—all having been established by admissible evidence (*Mayberry v. Beck,* 71 Kan. 609, 81 Pac. 191, 68 A. L. R. 6, 68 A. L. R. 88; and see Kansas cases accumulated in *Swaller v. Milling Co.,* 116 Kan. 329, 333, 334, 226 Pac. 1001)—we think it clear the parties to the deed intended that

it convey the entire 83.69835 acres. This conclusion is fortified by several rules of law assisting such construction of the deed in addition to the rules heretofore stated.

In general, the intention of the parties as duly ascertained will determine the question as to the quantity of land conveyed by a deed. So, where an intent to convey the entire interest of the grantor is clear from the whole deed, the instrument should be so construed as to effectuate such intent. Again in such cases the rules apply that, where the description is of doubtful character, the instrument shall be construed against the grantor and in favor of the grantee. There is a presumption that a grantor intends to convey his entire interest, and a deed will be taken to convey the entire property and interest of the grantor in the premises unless something appears to limit it to a lesser interest.

Where the description of the land in a deed is uncertain or ambiguous as to the quantity conveyed, which is latent in character as here, it is proper for courts to resort to parol evidence, not to contradict the instrument but to explain the ambiguity or uncertainty, in order to show the situation and condition existing upon the property conveyed, the circumstances under which the conveyance was made and the practical construction put upon the conveyance by the parties for the purpose of ascertaining their intention. This inquiry should be confined to the time of the execution of the deed without reference to subsequent circumstances. (*Mayberry v. Beck*, supra, and see cases accumulated in *Swaller v. Milling Co.*, supra.) Thus, where a vendor places his purchaser in possession of land, as here, under a certain description in the deed, the vendor cannot afterward avail himself of any ambiguity in the conveyance, their contemporaneous construction fixing the intention of the parties.

The words "more or less" when used in a deed with reference to the description of the property are to be construed with reference to the particular circumstances involved. Generally they relieve a stated distance or quantity of the attribute of exactness. Further, such words generally indicate a sale in gross, unless the words are qualified or defined. Such words negative the idea of exact knowledge and import that the actual quantity is a mere approximation to that named, but allow for a reasonable excess or deficiency. (See *Armstrong v. Brownfield*, 32 Kan. 116, 4 Pac. 185; *Maffet v. Schaar*, 89 Kan. 403, 131 Pac. 589; *Martin v. Ott*, 114 Kan. 419, 219 Pac.

275; 1 A. L. R. 2d, § 30, p. 89; 26 C. J. S., Deeds, § 102b, p. 892; 91 C. J. S., Vendor & Purchaser, § 93c, pp. 978, 979, and cases cited therein.)

It may be asserted in view of the foregoing statements that the vendors of appellant's predecessor in title are not asserting a claim against the appellant.   In this respect it must be disclosed the trial court admitted evidence, over objection by counsel for the appellant on the ground of materiality, that the McKenna heirs caused an inventory to be filed in the estate of Matilda McKenna, who died on the 23rd day of December, 1923, listing one acre of ground described as the "South one acre of the North ½ of Section 31" as the property of Matilda McKenna.   Evidence was similarly admitted over objection that the McKenna heirs filed an inventory in the estate of James A. McKenna, who died on the 27th day of July, 1946, listing one acre of ground as was previously done in Matilda's estate.   Tax rolls were admitted into evidence showing that the heirs of Matilda McKenna paid taxes on the one acre inventoried for the years 1936, 1937 and 1938.   There was testimony that they had paid taxes on this particular acre until the time this suit was filed.   On October 22, 1954, certain McKenna heirs conveyed all their title and interest in said one-acre tract to the defendant, James E. Schammerhorn, by quitclaim deed describing said tract in said deed as the "South one acre in the North half of the South East Quarter of Section 31-29-4W."   (The case at bar was filed by the plaintiff on September 8, 1954, in the district court of Sedgwick County, Kansas.)

The admission of the foregoing evidence was erroneous since it was immaterial in the case.   It had no bearing on the issue which concerned the intention of the parties to the deed in 1913 when the property was conveyed.   The appellant and her predecessors in title were placed in possession of the strip of land in question and farmed it from the date of the original conveyance by the McKennas in 1913 until 1954, when the appellee constructed a fence dividing the "long" quarter section into two equal halves quantitatively.   The record does not disclose that rent or crop shares were ever paid or to be paid for farming this strip of land.

It is apparent the trial court ruled this case on the theory of adverse possession, which is one of the theories of title asserted by the appellant in the trial of her case.   In making its decision against the appellant the trial court found (Finding No. 7) as follows:

"There is no evidence that any of the plaintiff's predecessors in interest, or plaintiff herself, ever intended to claim property not covered by their respective conveyances or that they claimed title by adverse possession."

The legal significance of the facts established by the uncontroverted material evidence relating to the intention of the parties as to the quantity of land conveyed by the deed on February 6, 1913, makes this finding of the trial court relative to adverse possession immaterial as surplusage.

Heretofore the recital of facts has not indicated the manner in which Eva Brewer, appellant, procured title to the property in question, except to indicate that the original grantee in 1913, D. F. Rowan, was her father. In the year 1935 the Prudential Insurance Company of America foreclosed its mortgage against the property owned by D. F. Rowan. As a result of the foreclosure a sheriff's deed was executed conveying the interest of D. F. Rowan and E. J. Rowan, his wife, in "The South Half of the Southeast Quarter of Section Thirty-one (31), Township Twenty-nine (29) South, Range Four (4) West of the Sixth Principal Meridian, except railroad right-of-way, in Sedgwick County, Kansas" to the Prudential Insurance Company of America on the 3rd day of May, 1937. Shortly thereafter on the 16th day of July, 1937, Prudential conveyed this property described as set forth in the sheriff's deed to Eva Brewer. After giving the description of the property in the deed the following recital was made:

. "Being The same premises conveyed to The Prudential Insurance Company of America by deed dated May 3, 1937, and recorded in book 484, page 75."

A judicial sale of land made in pursuance of a decree of foreclosure, wherein all of the parties to the action were barred from claiming any rights or equities in the property, vests in the purchaser as good and perfect an estate in the premises therein mentioned as was vested in the person or persons against whom the foreclosure order was issued at or after the time when such lands or tenements became liable to the satisfaction of the judgment for which the same was sold. (G. S. 1949, 60-3465; *Smith v. Harris*, 181 Kan. 237, 311 P. 2d 325; and cases and authorities cited therein.)

It is clear that Prudential as a result of the sheriff's deed acquired title to the entire 83.69835 acres owned by D. F. Rowan and his wife, and that the subsequent conveyance of Prudential to the appellant, reciting that it specifically conveyed the same premises conveyed to it, passed to the appellant full title to the 83.69835 acres.

Appellee relies upon the proposition of law that in an ejectment action, the plaintiff must rely on the strength of her own title, and not on the weakness of her adversary's title. (*Manville v. Gronniger*, 182 Kan. 572, 322 P. 2d 789; *McHenry v. Pence*, supra; and *Intfen v. Hutson*, 145 Kan. 389, 65 P. 2d 576.) This proposition of law is correct but it has no application here. The source of appellant's title was shown to have come directly from the McKennas by deed in 1913. The mere fact that the McKennas, appellant's predecessors in title, originally owned the entire "long" quarter section of land, and that the respective titles of both the appellee and the appellant stemmed from these common grantors, does not convert appellant's proof into an assertion of the weakness of appellee's title, although incidentally proof of appellant's title also disclosed the weakness of appellee's claim to title.

Having concluded that appellant's predecessor in title, D. F. Rowan, obtained title by conveyance under a deed in 1913 to all of the remaining tract in the "long" quarter section of land in controversy, after the grantors had previously conveyed the North 80 acres "precisely" to appellee's predecessors in title in 1902, and that appellant succeeded in chain of title to all the property owned by D. F. Rowan, her predecessor in title, it follows that the judgment of the trial court should be and hereby is reversed with directions to enter judgment for the appellant.