No. 29,961.

Eugene Wallace, *Appellant,* v. M. O. Carter, A. H. Warner, and J. M. Dunn, *Appellees.*

(299 Pac. 966.)

Opinion filed June 6, 1931.

S. S. *Alexander,* of Kingman, and *Fred J. Evans,* of Garden City, for the appellant.

*Edgar Foster, Horace J. Foster, C. E. Vance, Clifford R. Hope* and *A. M. Fleming,* all of Garden City, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action for a balance of $750 claimed to be due for the rent of pasture and farm land for the year 1928. The

trial court sustained a demurrer to plaintiff's evidence, and he has appealed.

The record discloses substantially the following: Plaintiff owned, in Kearny county, 1,120 acres of pasture land and 320 acres of farm land, and 40 acres, a part of which was farm land and the rest pasture. There was a set of improvements, and a small part of the pasture near the improvements was fenced. The rest of the pasture land was scattered, and all of the land was situated within a large pasture or range containing about forty sections, owned by various individuals. Defendants were in the sheep business. Plaintiff met defendants at Garden City about May 1 and told them about his land, that his improvements constituted a headquarters for the large pasture; that he had two windmills on a half section about a mile east of the headquarters, and represented that he owned all the fences around the large pasture or range; that a Mr. Lee, who had formerly used his land, had used all of the pasture, and he saw no reason why it could not be continued, although he would not want to put into a lease descriptions of lands which he did not own. There was talk about a written lease, but whether all the terms of the lease had been agreed upon is not clear from the record. One of the defendants talked with plaintiff by telephone on May 13. On May 14 the defendant Carter wrote plaintiff, inclosing a check for $250 "on pasture and plow land per our conversation and phone talks; that is, about two sections of grass land, water plants and improvements; also half section of plow land. This two sections being all the grass land you own." The letter asked for the numbers of plaintiff's land so a lease could be drawn, stated the sheep were being moved to the pasture, spoke of paying an additional $250 July 1, and $500 in the fall. Upon receipt of this letter plaintiff prepared a lease in duplicate which described the pasture land and the farm land above mentioned, and also described the about forty acres, "should party of the second part desire the same," and was for a term of three years beginning May 1, 1928, and provided for the payment of rent, $1,000 for the first year and $1,200 each for the second and third years, and containing other covenants usual in leases. Plaintiff mailed the unsigned lease to the defendant Carter on May 17, with a letter in which he asked defendants to sign the lease and return it to him, and, among other things, stated: "If anything you want to talk about we will come

to a mutual agreement when I come out." Defendants did not execute the lease, but on May 25 wrote plaintiff that on moving sheep to the ranch they found it stocked with from 300 to 500 cattle and a lot of horses; that they could find no one attending to the stock, but the neighbors stated they belonged to Mr. Lee. The letter stated:

"That large a bunch of stock will keep the grass down and especially around the water holes. . . . I understood you that Mr. Lee had moved his stock, . . . What can be done to get him off? He should certainly pay you good and plenty, which would allow you to give me a credit, but even then, I would much rather he did not have them there, . . . they keep the grass down just where I most need it. I felt sure you did not know stock was running there."

There was further correspondence, and a consultation in July. We need not detail all of it. The result was that Lee's stock stayed on the pasture all summer. Defendants did use the improvements and the farm land and had their sheep in the large pasture, but had to hire an extra man with them, which was an expense, and the stock did not do well.

Plaintiff's contention is that defendant's letter of May 14 and plaintiff's letter of May 17 inclosing the unsigned lease, and the fact that defendants went into possession of the improvements and farm land, made a valid and binding obligation on defendants to pay the full amount of the rent called for in the lease. Citing *Bard v. Elston,* 31 Kan. 274, 1 Pac. 565; *Barhyte v. Real-estate Co.,* 66 Kan. 390, 71 Pac. 837; *Marks v. Chumos,* 82 Kan. 562, 109 Pac. 397; *Willey v. Goulding,* 99 Kan. 323, 161 Pac. 611; *Skinner v. Davis,* 104 Kan. 467, 179 Pac. 359; and allied cases. The difficulty with this argument and the authorities cited, when applied to the facts in this case, is that the plaintiff in this action did not put defendants into possession of all of the leased premises. A large part of it—practically all of the pasture land—remained in the possession of a prior occupant to such an extent as to deprive defendants of the beneficial use of those premises.

Whether the lease contained a covenant of quiet enjoyment of the leased premises or not in the absence of such a covenant one is implied. (*Stewart v. Murphy,* 95 Kan. 421, 148 Pac. 609.) See, also, annotation on this case where it is reported in Ann. Cas. 1917C 612, 615 to 619. See, also, annotation on this subject in 62 A. L. R. 1257, where it was said:

"While there was some difference of judicial opinion regarding the rule at an early time, it seems now to be established that, in the absence of an express covenant inconsistent therewith, the ordinary lease of realty raises an implied covenant that the lessee shall have the quiet and peaceable possession and enjoyment of the leased premises, so far as regards the lessor, or anyone lawfully claiming through or under him, . . ." (p. 1258.)

A number of cases are cited. (See, also, the discussion in *Anderson v. Bloomheart*, 101 Kan. 691, 168 Pac. 900.) Here the evidence disclosed that Lee was a prior occupant of the premises. Plaintiff represented to defendants that Lee would move his stock from the premises about May 1. This was not done. Perhaps defendants would not have undertaken to use the premises at all had they understood that situation would continue. They did make use of a part of the premises. No lease was ever agreed upon between the parties as to the portion of the premises which defendants did use. The letters and unsigned lease implied a covenant of peaceful possession and quiet enjoyment, which covenant was never complied with. The trial court properly denied plaintiff a recovery upon the theory that these instruments, coupled with the taking of possession of part of the premises by the lessees, constituted a valid obligation for the payment of the full amount of the rent, for the reason that defendants never took nor obtained full possession of the leased premises.

There was no error in the ruling of the court below, and the judgment is affirmed.