No. 44,825

VERYL L. THURMAN, *Appellee,* v. MELVIN F. TRIM and EILENE TRIM, *Appellants.*

(433 P. 2d 367)

Opinion filed November 13, 1967.

*Charles F. Forsyth,* of Erie, argued the cause, and *Clark M. Fleming,* of Erie, and *John W. White,* of Chanute, were with him on the brief for the appellants.

*John C. Rubow,* of Chanute, argued the cause, and *John Anderson, Jr.,* of Olathe, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This was an action involving a farm lease whereby injunctive relief was sought by the lessee, Veryl L. Thurman, against the lessors, Melvin F. Trim and his wife Eilene. From a judgment of the district court granting a permanent injunction in favor of the lessee, the lessors have appealed.

The parties agree that although the action was for an injunction, it was brought to attain the same result as an action for specific performance of the lease agreement.

Thurman had an extensive cattle operation covering over 700 acres in Neosho county. On January 25, 1964, he went to the farm home of the Trims for the purpose of renting their property, consisting of approximately 230 acres lying in the middle of Thurman's operation. Thurman brought with him a partially typed farm lease, and while consulting with the Trims, filled in the blank spaces. The filled-in portions were initialed and the instrument was executed by all parties.

The lease purported to cover property described therein as

"N½—SW¼ & SW¼—SW¼ and W½ NW¼—18-29-19—or approximately 230 acres Situated 1 mile west and 3½ mile North of Galesburg, Kansas."

The parties agree the description was erroneous. The Trims actually owned 230 acres, but the legal description encompassed only 200 acres. Ten or twenty acres of that described was not owned by them, while fifty acres owned by them was omitted from the description.

The term of the lease was from March 1, 1964, to March 1, 1966, with an option in Thurman's favor to extend the lease for three years. The annual rent was $1,350—$675 payable March 1, and a like amount on September 1 of each year. Thurman was granted an option to purchase the property for $125 per acre during the term of the lease or renewal thereof. The lease provided that Thurman was to have the privilege of "using all acreage described [as he deemed] advisable following normal agricultural practices." It was further provided that the Trims were to furnish fencing materials and assist Thurman in the installation of the same. The Trims were also to carry insurance on what was described as a "building." In addition, the lease contained the usual provisions

relating to peaceable possession by the lessee, and a termination provision for nonpayment of rent or unlawful use.

Thurman took possession of the entire 230 acres, except for the house, which the Trim family continues to occupy. Trim also kept a horse and one or more cows of his own on the property—the exact number is in dispute. Thurman offered evidence that he had done considerable work in improving the pasture and fences, and had spent about $1,400 on the property.

On January 31, 1966, shortly before the expiration of the original two-year term, Thurman notified the Trims by letter that he was exercising the option to renew the original lease according to its terms. In the letter of renewal the Trims were informed that they would have to cease keeping a horse and cows on the premises but could continue to occupy the house as long as such occupancy did not interfere with Thurman's operations. Thurman reserved the right to ask for possession of the house on ninety days' notice. Shortly thereafter, Trim, through his attorney, notified Thurman the lease would be terminated and Thurman's cattle moved off the premises on March 1, 1966. Subsequently, Trim moved the cattle across the road to other property belonging to Thurman and locked the gates.

On March 25, Thurman filed the present action which, in effect, asked that the Trims be enjoined from interfering with Thurman's peaceable enjoyment and right to possession of the leased premises. A restraining order was issued *ex parte.* The Trims then filed their answer, setting up the following defenses: (1) injunction was not a proper remedy, (2) fraud in the procurement of the lease, and (3) violation of the terms of the lease by Thurman. After a full hearing the district court granted a temporary injunction enjoining the Trims from interfering with Thurman's cattle operations and his quiet and peaceable possession of the leased premises, except they were allowed to continue to occupy the house and to keep one cow and calf.

By stipulation and agreement the matter was submitted for final decision to the district court on the same evidence that was introduced by the parties at the hearing on a temporary injunction. The court, in granting plaintiff relief, found that the parties were bound by the terms and conditions of the lease; that in spite of the inaccuracy of the description in the lease, the parties understood what property was being leased, and that performance had been had

under the correct description. The court further found that the plaintiff was innocent of any fraud; that the defendants had accepted the benefits of the lease for two years; that the plaintiff duly exercised the renewal option; that defendants were interfering with plaintiff's peaceable possession of the leased premises and denying him rights as lessee; that plaintiff had no adequate remedy at law, and defendants should be enjoined from interfering with plaintiff's possession of the leased land.

The Trims have raised substantially the same points on appeal as they urged as defenses at trial. Initially, they assert that an injunction action is not a proper remedy in this type of case. Reference is made to Thurman's not being in possession at the time the action was instituted and, therefore, not entitled to seek an injunction, since the remedy is available only to maintain the status quo and is unavailable to correct a past injury. We do not agree. In the first place the record fails to disclose that Thurman was completely ousted from possession at the time Trim removed the cattle. Thurman had made use of the barn at one time or another during the original term of the lease and had hay in the barn at the time the cattle were removed. More important is the fact that Thurman had already exercised the renewal provisions of the lease which entitled him to the continued right to possession of the premises.

In the absence of an express covenant to the contrary, a lease of realty carries with it an implied covenant that the lessee shall have quiet and peaceable enjoyment of the leased premises as against the lessor or those lawfully claiming under him. (*Robinson v. Armstrong*, 154 Kan. 336, 118 P. 2d 503; *Wallace v. Carter*, 133 Kan. 303, 299 Pac. 966.) To preserve that right against wrongful interference, the lessee may be entitled to equitable relief against the lessor or a third person. (*Peterson v. Vak*, 160 Neb. 450, 708, 70 N. W. 2d 436, 71 N. W. 2d 186, 51 A. L. R. 2d 1221; 32 Am. Jur., Landlord and Tenant §243; 51 C. J. S., Landlord and Tenant §320.) Likewise, there is authority for the proposition that a renewal clause in a lease may be specifically enforced. (32 Am. Jur., Landlord and Tenant §984; 81 C. J. S., Specific Performance §63 b.) For the reasons stated, we are of the opinion that the lessee was not precluded from resorting to injunctive relief.

In effect, Thurman requested the court to compel perfomance of the implied covenant of quiet and peaceable enjoyment of the leased premises. Although the action was denominated as one for an injunction, it sought to accomplish the same purposes as a decree

for specific performance and, therefore, is governed by the equitable principles applicable to the latter remedy. ( *City of Holton v. Kansas Power & Light Co.,* 135 Kan. 58, 9 P. 2d 675. ) Whether equity will decree specific performance of a contract is a matter for the exercise of sound judicial discretion, and depends upon the facts of the particular case. ( *Wetzel v. Hattrup,* 174 Kan. 244, 255 P. 2d 637. )

The Trims contend the terms of the lease relating to the description of the property are so ambiguous and uncertain that the lease cannot be specifically enforced. We are unable to agree.

We have had occasion to point out that specific performance of a written contract for the sale of real estate will not be denied merely because the description of the property is so ambiguous and uncertain that resort must be had to the use of parol or extrinsic evidence. In such case a description is sufficient if the parties to the contract know what is being bought and sold, and the land is so described that the court can, with the aid of extrinsic evidence, apply the description to the exact property intended to be sold. ( *Bacon v. Leslie,* 50 Kan. 494, 31 Pac. 1066; *Hollis v. Burgess,* 37 Kan. 487, 15 Pac. 536. ) In *Brewer v. Schammerhorn,* 183 Kan. 739, 332 P. 2d 526, which involved an ambiguous and uncertain description in a deed, the following rule was recognized and applied:

"Where the description of the land in a deed is uncertain or ambiguous as to the quantity conveyed, which is latent in character as here, it is proper for courts to resort to parol evidence, not to contradict the instrument but to explain the ambiguity or uncertainty, in order to show the situation and condition existing upon the property conveyed, the circumstances under which the conveyance was made and the practical construction put upon the conveyance by the parties for the purpose of ascertaining their intention. This inquiry should be confined to the time of the execution of the deed without reference to subsequent circumstances. ( Citing cases. ) Thus, where a vendor places his purchaser in possession of land, as here, under a certain description in the deed, the vendor cannot afterward avail himself of any ambiguity in the conveyance, their contemporaneous construction fixing the intention of the parties." ( p. 745. )

We believe the foregoing principles apply with equal force to a written lease when parol evidence becomes necessary to determine the premises demised.

Here the court heard evidence concerning the property intended to be covered in the lease agreement. There is some conflict in the testimony as to how the erroneous description came about. The description on its face was uncertain and ambiguous in that only

200 acres were legally described, whereas reference was made to 230 acres. Mr. Trim testified that he thought he owned 240 acres and was leasing 230, "keeping out land for the house and my horse and my cow." The house was not specifically mentioned in any part of the lease, nor was the Trims' use of the house discussed at the time the lease was executed. The evidence clearly discloses that despite the erroneous description, Thurman was placed in possession of the entire 230 acres owned by the Trims, except for the house. This arrangement continued for nearly two years. During that time neither Trims' possession of the house nor Thurman's possession of the remaining tract was disputed. Application of the rule stated in *Brewer* makes clear the intention of the parties at the time the lease was executed that the Trims retain possession of the house and Thurman the remaining 230-acre tract. The provision of the lease requiring the Trims to carry insurance on a "building" lends some support to our conclusion that the house was not intended to be included as a part of the leased premises. At any rate, the intention of the parties, as manifested by their conduct from the inception, clarifies the ambiguity and uncertainty of the description. It follows that the Trims' right to possession of the house should remain undisturbed, and to that extent the trial court erred.

The Trims further complain that the trial court erred in failing to admit parol evidence to show that the terms actually agreed on were not contained in the written lease. This evidence was offered in support of their defense of fraud in the inducement, and they rely on this court's holding in *Mills v. Purdy,* 142 Kan. 133, 45 P. 2d 1049, to the effect that when equity is called on to decree specific performance of a written contract, the party to be charged may show fraud or mistake by parol evidence. We have no quarrel with the rule stated, but its application here is, in our opinion, unwarranted.

The Trims would ask us, as they did the lower court, to overlook the fact that the parties operated under the lease agreement for nearly two years before any affirmative act of disavowal or rescission was attempted. Mr. Trim testified he was satisfied with the lease when he executed it, and not until a week or two later did he become unhappy when he realized it did not contain the terms to which he thought the parties agreed. Despite his dissatisfaction, Trim took no action. He recognized the terms of the lease in all respects and accepted the benefits inuring to him thereunder until the option to renew was exercised by Thurman.

It was then he informed Thurman the lease would not be renewed.

It is well established that if a party desires to disaffirm a contract for fraud, he must act promptly after discovery of the fraud or lose the right of rescission. If by words or conduct he treats the contract as binding after having knowledge of the fraud, he thereby affirms the contract and cannot rescind. Many of our cases recognizing that the equitable remedy of rescission is available only to the diligent are cited and relied on in *Nichols Co. v. Meredith*, 192 Kan. 648, 391 P. 2d 136, where this court considered the availability of the defense of fraud and misrepresentation in an action for specific performance, and held that under the circumstances the defense was unavailable. Under the facts here Trim's repudiation of the lease agreement came too late, for he, by his previous conduct, had treated the agreement as binding. The trial court properly excluded the parol evidence for the reason that fraud as a defense had been waived.

The Trims' further contention that Thurman had an adequate remedy at law cannot be sustained. There was evidence before the court that the property in question was strategically located in relation to other land owned or leased by Thurman for his cattle operation. Although the recovery of damages might well provide some relief to the lessee in this case, that remedy lacks the completeness and effectiveness of a decree in equity. See *Scott v. Southwest Grease & Oil Co.*, 167 Kan. 171, 205 P. 2d 914, and *Kanner v. Enzler*, 56 N. Y. S. 2d 604.

What has been said effectively determines the substantial points raised on appeal. We have, however, examined each of the matters about which appellants complain, but find nothing that would justify further discussion or require reversal. The judgment of the lower court, except as it applies to the house, is affirmed.

It is so ordered.